## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

**MARY GHALY, M.D.,**
     **-Plaintiff**


**-v-**                              **CIVIL NO. 3:04 CV 1779 (DJS/TPS)**


**JOHN H. SIMSARIAN, et al.,**
     **-Defendants**

### MAGISTRATE'S OPINION

An evidentiary hearing was held on October 11, 16 and 17, 2006 on plaintiff's motion for a preliminary injunction (Dkt. #45).[1] By that motion, the plaintiff, a medical doctor employed by the Southeast Medical Health Authority (SMHA), seeks to enjoin her transfer to what appears to be a comparable position at the

---

[1] The pending motion is before the undersigned not for a *decision,* but for the limited purpose of conducting a hearing and submitting a *recommendation* to District Judge Squatrito pursuant to 28 U.S.C. §636(b)(1)(B), so that *he* can decide whether to issue an injunction.  Judge Squatrito was aware of the pendency of these motions, yet deliberately referred only the injunction motion to the undersigned.  Judge Squatrito is aware of <u>Steel Co. v. Citizens for Better Environment</u>, 523 U.S. 91, 93-98 (1998).  It is completely appropriate for a district judge to refer an injunction motion to a magistrate judge in circumstances such as this, since, among other things, the magistrate judge's recommendation can be of assistance to court in assessing the immediacy <u>vel</u> <u>non</u> of addressing the dispositive motions, thus assisting the district judge in docket management.  A litigant cannot expand the scope of a statutory reference to a magistrate judge by filing motions.

Connecticut Valley Hospital (CVH).  For the reasons that follow, plaintiff's motion (Dkt. #45) to enjoin her transfer should be denied. 28 U.S.C. §636(b)(1)(B).

## I. Facts[2]

SMHA is a facility within the State of Connecticut's Department of Mental Health and Addiction Services (DMHAS). SMHA provides two, limited short-term residential care programs, the Brief Care program and the Life Skills program (about 20 beds total), and several out-patient support programs for people with psychiatric or detoxification issues.  SMHA is a facility for people who do not require a hospital level of care.  The Brief Care and Life Skills programs attempt to prepare clients for reentry into the community.

SMHA's programs and services follow what is termed "a recovery-based community treatment model."  "This programmatic philosophy encourages the exercise of client choice through access and utilization of entitlements like Medicare and Medicaid that allow clients to choose their own community based care givers." (Defendants' Proposed Findings of Fact #2).

---

[2]

The magistrate adopts defendants' proposed findings of fact ## 1 through 104 because they are supported by the testimony and the exhibits introduced at the three day injunction hearing. Throughout the body of this opinion, the magistrate has tried to select certain of these facts for discussion, supplementing them with additional findings.  The magistrate's findings are interspersed throughout this opinion, and not confined to any one section thereof.

The plaintiff, Mary Ghaly, M.D., is the only staff internist employed at SMHA, which is located about nine miles from plaintiff's home.  She has worked at SMHA since 1996.  Nancy Rossi, a non-physician, Clinical Manager 2, was assigned to supervise Dr. Ghaly administratively in 2001.  Dr. Ghaly has no clinical supervisor.  Nancy Rossi manages facility-wide programs and services.  Over the years, it became apparent that using one staff physician assigned solely to the Brief Care and Life Skills was not the most efficient use of scarce resources.  SMHA refocused Dr. Ghaly's assignments from direct patient care to  more of a consultant role for all of SMHA's programs.

Dr. Ghaly had complained for years that she was not happy with the refocusing of her assignments from direct patient care of clients in the Brief Care program to spending more time consulting to all of SMHA's teams.  At present plaintiff acts primarily as a consultant to numerous outpatient SMHA teams, with limited direct patient care.  Dr. Ghaly also had complained for years that she did not like Nancy Rossi supervising her, and that she wanted a physician to provide both clinical and administrative supervision. There is no credible evidence that any non-physician ever attempted to give plaintiff medical supervision.

Dr. Ghaly did not like being supervised administratively by Nancy Rossi because Ms. Rossi is not a medical doctor.  Ms. Rossi happens to be a Licensed Clinical Social Worker, although this is

not a degree requirement for the position of Clinical Manager 2. It is common practice in DMHAS to have a person who is not a medical doctor (such as a Clinical Manager) provide non-clinical, administrative supervision to a medical doctor. For example, Cheryl Jacques, a Clinical Manager 3, who happens also to be an Advanced Practice Registered Nurse, provides administrative supervision to Dr. Zepf, a medical doctor, who is the Chief Psychiatrist and the Medical Director of SMHA.

Dr. Ghaly complained that she was receiving administrative supervision from a non-medical doctor. She also complained that she was not receiving clinical supervision from a medical doctor. Although there are psychiatrists at SMHA, these medical doctors cannot provide clinical supervision to Dr. Ghaly because clinical supervision must be provided by a physician with a greater level of knowledge and experience in a specific area of practice which, in the case of Dr. Ghaly, is internal medicine.

Kenneth Marcus, M.D., the Medical Director of DMHAS; Paul DiLeo, the Chief Operating Officer of DMHAS; Raymond Cioffi, the Director of Labor Relations of DMHAS's Labor Relations Unit; Ann Smith, the Legal Policy Advisor to the Commissioner of DMHAS; and various others had numerous discussions how to resolve the supervision issues that were raised by Dr. Ghaly. It was recognized that, within SMHA's organizational structure, DMHAS could not provide the necessary clinical supervision over Dr.

-4-

Ghaly.  DMHAS believed that it was its "management responsibility" to provide every employee, including Dr. Ghaly, an appropriate level of supervision.

In response to plaintiff's own complaints of a lack of clinical supervision at SMHA, the decision was made to transfer Dr. Ghaly to CVH.  A notice of transfer from SMHA to CVH, dated July 20, 2006, was sent to the plaintiff.  This transfer will place Dr. Ghaly, a staff physician internist, at a facility where there are other staff internists currently receiving clinical supervision. At the hearing Dr. Marcus and Mr. Cioffi also credibly testified that the transfer of Dr. Ghaly to CVH is also in keeping with SMHA's programmatic philosophy of encouraging community-based medical services.  The transfer to CVH will also alleviate Dr. Ghaly's complaint by providing her with more direct patient care than allowed by her present assignment at SMHA.

The decision to transfer Dr. Ghaly from SMHA to CVH was made without regard to any complaints made by Dr. Ghaly about the quality of patient care.  The decision to transfer Dr. Ghaly was made without regard to any speech on her part, or on the part of anyone else.  Dr. Marcus, and the other witnesses for the defense, credibly testified that the decision to transfer was made based on DMHAS's operational needs.  DMHAS has discretion where to place an employee's position based on the operational needs of the department.  Positions belong to DMHAS, not to the particular

facility within DMHAS.  Dr. Ghaly's transfer also was determined to be in the best interests of DMHAS because it will free up some of the time of Kenneth Freedman, M.D., thus allowing Dr. Freedman to work on a long-planned statewide health care initiative.

Dr. Ghaly's assignments at CVH will mostly involve direct patient care.  She will have a caseload comparable to other staff physicians at CVH, and she will receive appropriate clinical supervision from a medical doctor.  She will be assigned to Merritt Hall, a facility which has elevators for staff and patient use, and which has the lowest percentage of incidents of patient violence. There is also a back up generator there in case of power failure. Her pay and benefits will remain the same, consistent with the collective bargaining agreement.  There will be no change in her job classification.

The plaintiff will suffer no serious hardship or irreparable harm from her transfer to CVH.  She presently has no health issues that restrict her work at SMHA.  She has submitted no medical documentation informing the agency of any present cancer treatment, medication, or restriction of her work responsibilities.  It was only after receiving notice of her transfer that plaintiff saw her orthopedist to complain that the prescription drug Aromatize she takes for arthritis has increased stiffness in her knee.

The plaintiff has filed a grievance challenging her transfer to CVH.  Plaintiff's union, The New England Health Care Employees

Union, District 1199 SEIU, is also challenging the transfer within the agency.  Further, a union representative, Michael Haynie, testified at the hearing that the union is filing an unfair labor practice complaint with the state Department of Labor.

It is the union's position that Dr. Ghaly's projected transfer is punitive.  Haynie testified that in his view, and the union's, the defendants' explanation for Dr. Ghaly's transfer are pretextual.  Haynie further testified that the union intends to take Dr. Ghaly's grievance to arbitration, although this process could take possibly a year or longer.  It was Haynie's view that the quality of health care in the area served by SMHA will decline if Dr. Ghaly is transferred, as she is the only internist on SMHA's staff.[3]  This view was echoed by witness Patrick Dolan, a licensed

---

[3] The plaintiff Ghaly, union representative Haynie, and Mr. Dolan have their own views about what is best for the patients at SMHA. Dr. Marcus, and the other DMHAS employees who testified have conflicting views.  The latter are far better qualified to make this determination than are the former, and their testimony is qualitatively superior.  To the extent plaintiff purports to seek injunctive relief to prevent irreparable harm to third persons (e.g. patients of SMHA, present and future), her application also fails.

The Second Circuit has "recognized that, as a court of equity, [it] 'may go much further both to give or to withhold relief in furtherance of the public interest than where only private interests are involved.'" Standard and Poor's Corp. v. Commodity Exch., Inc., 683 F2d 704, 711 (2d Cir. 1982), quoting Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115, 1121 (2d Cir. 1975), cert. denied, 426 U.S. 911 (1976).  Thus, "[i]n making the determination of irreparable harm, both harm to the parties and to the public may be considered." Long Island R.R. Co. v. International Ass'n of Machinists, 874 F.2d 901, 910 (2d Cir. 1989). There has been no credible showing that the public interest would be hurt by withholding injunctive relief in this case.

clinical social worker employed by DMHAS who testified that retaliation is commonplace at SMHA, and that Dr. Ghaly's presence at SMHA is not a luxury, but a necessity.[4]

The court finds that the testimony of Patrick Dolan and Michael Haynie is far less persuasive than that of Dr. Marcus; Paul DiLeo; Denise Tyburski, the Human Resources Director of SMHA; Raymond Cioffi; Nancy Rossi; and Cheryl Jacques, all of whom testified that Dr. Ghaly's transfer was motivated by legitimate agency concerns over the proper allocation of resources, and supervision issues which Dr. Ghaly herself raised.  There is no credible evidence that Dr. Ghaly is being transferred for disciplinary reasons or in retaliation for having spoken about the quality of patient care.

Although union leader Michael Haynie testified that the quality of medical care at SMHA will suffer if Dr. Ghaly is

---

[4]
    Mr. Dolan testified that he personally has been retaliated against at SMHA and that, contrary to the testimony of Dr. Kenneth Marcus, there really is not a "culture of free expression" at SMHA. He testified that, in his view, it is not in SMHA patients' best interests to be forced to seek medical care from community health care providers because they very often simply send these SMHA patients right back to SMHA, the implication of Mr. Dolan's testimony being that, if Dr. Ghaly is taken away from SMHA, these people will have no one attending to their needs.  Mr. Dolan gave an example of an obese gentleman whose medical needs would not have been addressed if Dr. Ghaly had not done so.  After the hearing, Mr. Dolan wrote an unsolicited letter to the magistrate judge stating that he had sat through the entire hearing and expressing the opinion that he had witnessed DMHAS's leadership commit perjury during their testimony.  The undersigned ordered that Mr. Dolan's letter be filed and docketed (Dkt. #82), and provided a copy of it to all counsel.

transferred to CVH, the contrary testimony by Dr. Kenneth Marcus, a medical doctor and the  Medical Director of DMHAS, is much more persuasive on this point.    The court credits Dr. Marcus's testimony. The court also credits Dr. Marcus's testimony that no one has ever provided him with a complaint about a specific instance of substandard medical care at SMHA.  DMHAS has discretion to allocate staff resources.  Normally, employees do not have the right to select their own supervisors.  DMHAS has a right under the Collective Bargaining Agreement to involuntarily transfer an employee based on management's responsibilities and needs.  The transfer of Dr. Ghaly to CVA appers to be a good faith, legitimate attempt to address the needs of DMHAS, and Dr. Ghaly's complaints about her lack of clinical supervision at SMHA.  The transfer of plaintiff to CVH will also deliver her from what she has claimed is a "hostile work environment" at SMHA.

Dr. Ghaly contends that she has been the victim of retaliation for having exercised her First Amendment rights.  Her motion for a preliminary injunction states:

> In her complaint, the plaintiff has sought relief from a pattern and practice of unequal treatment between herself and the other physicians, who are younger and non-Egyptian. The plaintiff has filed two complaints with the Commission of Human Rights and Opportunities, and as a result has been retaliated against by the defendants . . . . The plaintiff has also made numerous complaints about the lack of adequate medical care the patients are receiving at SMHA due to decisions regarding this care being made by

> non-physicians. The care of these patients is of great public importance and the retaliation of the defendants against the plaintiff is in violation of the First Amendment . . . .
>
> On July 20, 2006, after almost two years of litigation . . . , the defendants involuntarily transfer [sic] the plaintiff to [CVH]. The plaintiff contends this is another form of retaliation for her filing of this complaint, voicing her First Amendment rights and the CHRO complaints.

(Dkt. #45)(Emphasis added). Plaintiff's contention, therefore, is that the transfer she seeks to enjoin was initiated in retaliation for her having: (1) lodged two CHRO complaints before bringing this lawsuit, and (2) made "numerous complaints about the lack of adequate medical care patients are receiving at SMHA due to decisions regarding this care being made by non-physicians."

## II. The Irreparable Harm Requirement

"Irreparable injury is the sine qua non for the grant of preliminary injunctive relief." United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). Irreparable harm has been defined by the Second Circuit as "harm shown to be non-compensable in terms of money damages." Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003). "[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue." Jayaraj v. Scapini, 66 F.3d 36, 39 (2d Cir. 1995), (citing Loveridge v. Pendelton Wollen Mills, Inc., 788 F.2d 914, 914 (2d Cir. 1986)).

A showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983), quoting 11 C. Wright & A. Miller, Federal Practice and Procedure §2948 at 431 (1973).  The threat of irreparable harm, moreover, must be actual and imminent, not remote or speculative. Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002); Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).  Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979); Kamerling, 295 F.3d at 214.

Although plaintiff claims she will be irreparably harmed if she is transferred to CVH from her present place of employment at SMHA, the credible evidence adduced at the hearing does not bear this out.  Based on the uncontroverted testimony, the court finds that plaintiff's proposed transfer to CVH involves no change in her salary; no change in her employment benefits; no change in her job classification; and no substantial change in her duties.

While the commute from plaintiff's home to CVH arguably would average as much as 30 minutes longer each way daily over a road that sometimes is congested, this is hardly onerous and falls short of establishing irreparable harm.[5]  Indeed, courts have found

---

[5]    The parties dispute the distances between plaintiff's home in Niantic to SMHA and to CVH. Defendants maintain that Dr. Ghaly's commute to CVH is only 14 minutes longer than her commute to SMHA. (Defendants' Proposed Finding of Fact #76).   The plaintiff, however, maintains that the commute from her home to SMHA is

that substantially longer increases in commutes do not even rise to the level of "adverse employment action."  See, e.g. <u>Sciences v. Denver Public Schools</u>, 164 F.3d 527, 532 (10th Cir. 1988)(increase in commute time from "between five  and seven minutes to between thirty to forty minutes" not adverse employment action); <u>Nelson v. General Elec. Co</u>., 2 Fed. Appx. 425, 433 ("a longer commute with the same job title, salary, and benefits is not an adverse employment action.")

     There is insufficient evidence that Dr. Ghaly suffers from any medical condition that would preclude her transfer from SMHA to CVH.  Her sealed medical records, which the court has examined, are unremarkable.  There is no non-speculative, credible evidence that plaintiff's health will suffer if she is transferred to CVH.  The plaintiff has some arthritis, but it does not appear likely to be exacerbated by her transfer to CVH.  Before receiving her notice of transfer, she had not seen her orthopedist for four years.  Plaintiff's speculation that a power failure at CVH might place the elevators there out of service, thus making extremely difficult for her to move between floors, is far too speculative a basis on which to conclude she would be irreparably harmed by her transfer to CVH.

---

roughly 15 to 20 minutes each way, while the commute from Niantic on a Saturday afternoon was 48 minutes each way, an increase of 28 to 33 minutes each way, or roughly a hour round trip per day. (Plaintiff's Proposed Finding of Fact #11)  Even accepting plaintiff's representations, the court finds that this increase is not so onerous as to constitute a hardship or irreparable harm.

Moreover, as defendants' counsel notes, CVH is equipped with a back up generator to run the elevators in the event of a power failure. While plaintiff presently parks her automobile close to the door at SMHA, nothing would preclude her from applying for a handicapped sticker enabling her to park adjacent to the door at CVH.

Although it is difficult to determine how it helps her case, plaintiff threatens that, if transferred, she will quit her job and assert that she has been the victim of a constructive discharge. While plaintiff is certainly free to do this, she should be aware that it is difficult to prove a constructive discharge, and that following this course of action could irreparably harm her case. In this regard, Judge Dorsey recently observed:

> "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Whidbee v. Garzarelli Food Specialties, Inc ., 223 F.3d 62, 73 (2d Cir. 2000) (internal citations omitted). Plaintiff must satisfy two prongs of this standard: the employer's intentional conduct, and the intolerable level of the work conditions. Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004). If a plaintiff cannot show specific intent, she must at least demonstrate that the employer's actions were "deliberate" and not merely "negligen[t] or reckless." Whidbee, 223 F.3d at 74. To decide whether the work conditions were intolerable, the Court's "inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position

would have felt compelled to resign?" <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 141 (2004).

<u>Oliphant v. State of Connecticut Department of Transportation</u>, No. 3:02 CV 700, 2006 WL 30030890, *7 (D.Conn. October 26, 2006).

Thus, "[t]he only thing an employer must do to defeat a claim of constructive discharge is provide a working environment that is not "intolerable."" <u>Wilburn v. Fleet Financial Group, Inc.</u>, 170 F.Supp.2d 219, 238 (D.Conn. 2001) citing <u>Cooper v. Wyeth Ayerst Lederle</u>, 106 F.Supp.2d 479, 497 (S.D.N.Y. 2000); "This, as the Second Circuit has held repeatedly, is a very low threshold.  Put conversely, a working environment can be far from perfect and yet will not be held to be intolerable." <u>Id.</u>  On the facts thus far developed, plaintiff's working environment at CVH would not be intolerable.  The court cannot find irreparable harm on the basis of inconveniences which, though unwelcome and annoying to the plaintiff, arguably fail to rise even to the level of adverse employment actions. <u>Ross v. Zavarella</u>, 916 F.2d 898, 902 (2d. Cir. 1990).

The plaintiff also alleges that the defendants are transferring her in order to punish her for having complained to CHRO, and for having spoken out about the quality of patient care at SMHA, speech which is protected by the First Amendment.  Plaintiff argues that allegations of infringement of a constitutional right automatically satisfy the irreparable harm

-14-

requirement.  The plaintiff offers the following limited analysis:

> "The Second Circuit has held that the alleged violation of a constitutional right triggers a finding or irreparable harm." <u>Jolly v. Coughlin</u>, 76 F.3d 468, 482 (2d Cir. 1986). Because violations of constitutional rights are presumed irreparable, <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976), "the very nature of [the] allegations satisfy the requirement that the plaintiff show irreparable injury." <u>State of Connecticut Dept. of Envtl. Prot. v. Occupational Safety & Health Admin.</u>, 138 F.Supp.2d 285, 291 (D.Conn. 2001), quoting <u>Bery v. City of New York</u>, 97 F.3d 689, 694 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1251 (1997). <i>Cf</i>. <u>Kamerling v. Massanari</u>, 295 F.3d, at 214-15 (2d Cir. 2002)."

(Dkt. 45-2, Plaintiff's Memorandum at 5-6).

The court cannot agree that Dr. Ghaly's allegations give rise to a *presumption* of irreparable harm.  Precisely when irreparable harm should be presumed has been discussed by the Second Circuit in <u>Bronx Household of Faith v. Bd. of Educ., of New York</u>, 331 F.3d 342, 349-50 (2d Cir. 2003):

> [W]e have not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights, see <u>Amandola v. Town of Babylon</u>, 251 F.3d 339, 343 (2d Cir. 2001) (per curiam).
>
> On the one hand, we have said that since violations of First Amendment rights are presumed to be irreparable, the allegation of a First Amendment violation satisfies the irreparable injury requirement. <u>Tunick v. Safir</u>, 209 F.3d 67, 70 (2d Cir. 2000). On the other hand, we have suggested that, even when a complaint alleges First Amendment injuries, irreparable harm must still be shown--rather than simply presumed--by establishing an actual chilling effect. See <u>Latino Officers</u>

<u>Ass'n v. Safir</u>, 170 F.3d 167, 171 (2d Cir. 1999).

\*      \*      \*      \*

Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed.  For example, in <u>Tunick</u> an artist was denied a city permit to conduct a photographic shoot of nude models on a residential street. 209 F.3d at 69.  In <u>Bery v. City of New York</u>, 97 F.3d 689 (2d Cir. 1996), groups of visual artists opposed enforcement of a city regulation prohibiting them from exhibiting or selling their work in public places without a general vendor's license; under the regulation, only a limited number of the licenses could be in effect at any time. <u>Id</u>. at 691- 92.  In both cases the challenged government action directly limited speech and irreparable harm was presumed.  See <u>Tunick</u>, 209 F.3d at 70; <u>Bery</u>, 97 F.3d at 693-94.

In contrast, in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights. The Supreme Court instructs us on this issue in <u>Laird v. Tatum</u>, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), that to establish a cognizable claim founded on the chilling of First Amendment rights, a party must articulate a "specific present objective harm or a threat of specific future harm." <u>Id</u>. at 14.

The court concludes that irreparable harm should not be presumed in the present case for the following reasons.

Plaintiff's allegations of constitutional injuries do not even appear to be of the type which would give rise to a *presumption* of irreparable harm.  There is no rule or regulation at play in the

-16-

present case which directly limits speech.  Nor does it appear that speech will either be facilitated through the entry of an injunction, or restrained if an injunction fails to enter.  While the loss of precious First Amendment freedoms even briefly can constitute irreparable harm, Kamerling, 295 F.3d at 214-215, no credible evidence was adduced at the hearing that the plaintiff's speech, or that of anyone else, has been restrained or curtailed. In fact, the evidence indicates that since receiving her notice of transfer, the plaintiff has continued to complain about her conditions of employment to the Governor's office and to at least four state legislators.  These complaints are in addition to her earlier generalized complaints about patient care, and her complaint to the Department of Public Health, which she filed in her capacity as a  DMHAS employee.[6]

No credible evidence was adduced at the injunction hearing to establish a causal connection between any of plaintiff's complaints

---

[6]

The defendants have filed a post-hearing motion (Dkt. #88) to supplement the preliminary injunction hearing record to include yet another complaint of Dr. Ghaly, a handwritten complaint to Ms. Ann Barrins, a consultant to SMHA, dated October 18, 2006.  The complaint is about medical care at SMHA and attempts to establish a "dichotomy of medical records physical examinations" carried out by plaintiff at SMHA as contrasted with those conducted by community health care providers.  Judge Squatrito referred this motion to the undersigned. Its inclusion in the record does not affect the magistrate judge's analysis or conclusions.  But it is one more piece of evidence that there has been no chilling effect on Dr. Ghaly's complaints.  It is within the court's discretion to permit the record to be supplemented, Noble v. National Mines Corporation, 774 F.2d 144, 149 (6th Cir. 1985).

and her transfer to CVH.  Plaintiff's proposed transfer comes years after the filing of her lawsuit and the CHRO complaints. Although plaintiff alleges that her transfer is retaliatory, the defendants have come forward with a reasonable, legitimate explanation of the reasons why they seek to transfer her from SMHA to CVH.  Apart from Plaintiff's conclusory imparting of sinister motives for the transfer, plaintiff adduced no credible evidence that the defendants' explanation for the transfer is pretextual.

The court credits Dr. Marcus's testimony as to the reasons for Dr. Ghaly's transfer to CVH.  With respect to plaintiff's conclusory allegations about patient care complaints,  the court credits Dr. Marcus's testimony that he has never received any specific complaints from Dr. Ghaly regarding the care of a specific patient.  The court also credits defendant's assertion that it did not even know of plaintiff's complaint to the DPH until it was revealed to them during the injunction hearing.  While the court does not doubt that Dr. Ghaly may have been the source of generalized grumbling, it also appears from the evidence introduced at the hearing that plaintiff's complaints were inextricably related to her employment situation.

### III. The Likelihood of Success Requirement

To be entitled to a preliminary injunction, a plaintiff must also demonstrate a likelihood of success on the merits. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.

1979).  Where, as here, a plaintiff seeks a preliminary injunction

seeking to stay governmental action taken in the public interest,

the less onerous "fair ground for litigation" prong of the Jackson

Dairy test is not available.  Latino Officers Ass'n. v. Safir, 170

F.3d 167, 171 (2d Cir. 1999).[7] For the reasons that follow, the

court concludes that plaintiff has not demonstrated a likelihood of

success on the merits of her claim.

Plaintiff claims she was retaliated against for filing two

complaints with CHRO against DMHAS.  The first one, in December

2003, complained about unequal pay and duties between her and

psychiatrists at SMHA.  The second, in May 2004, complained about

retaliatory harassment for having filed the 2003 complaint and

discriminatory suspension.  In June 2006, plaintiff also complained

to the Department of Public Health ("DPH") about work-related

administrative practices, including a reprimand and suspension.[8]

In her complaint to the DPH, Dr. Ghaly specifically stated that she

---

[7]

Even were the second less onerous prong available, on this
record, it does not appear that the "balance of hardship" tips
decidedly in plaintiff's direction.  DMHAS's legitimate interest in
freeing up the time of Dr. Kenneth Freedman so that he can work on
a statewide initiative which is important to DMHAS, as Dr. Kenneth
Marcus credibly testified, weighs at least as heavily on the
hardship scales as the inconvenience in Dr. Ghaly's going to CVH.
This is so without even weighing DMHAS's legitimate interest in
having discretion to allocate resources as it sees fit.

[8]Defendants assert that they did not see or learn of this
until after the October 12, 2006 hearing on the pending motion
for the preliminary injunction. See Defendants' Proposed Finding
of Fact #62.

was complaining in her capacity as a medical doctor employed by DMHAS to provide patient services.  In her post-transfer notice complaint to the Governor's office, Dr. Ghaly complained that her transfer was the result of her on-going employment problems.

Dr. Ghaly's alleged complaints about patient care stem from her dislike of Nancy Rossi, and Dr. Ghaly's belief that it is improper for a non-physician like Rossi to supply even administrative supervision to her because the plaintiff is a medical doctor.  Dr Ghaly's complaints attempt to create a causal connection between this supervision and inadequate medical care.  Dr. Ghaly's complaints also stem from a difference of opinion between her and DMHAS as to what is in the best interest of patients at SMHA.  As an employee of DMHAS, as well as a licensed medical doctor, Dr. Ghaly is obligated to report any incident of inadequate medical care.  To the extent Dr. Ghaly complained to anyone, it is likely to be found that she spoke not as a citizen, but as an employee of DMHAS about her working conditions at SMHA.

In Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006), the Supreme Court recently stated:

> Pickering [v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563 (1968)] and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech.  The first requires determining whether the employee spoke as a citizen on a matter of public concern.  See id. at 568.  If the answer is no, the employee has no First Amendment cause of action based

on his or her employer's reaction to the speech."

In view of Garcetti, plaintiff is not likely to succeed on her claim that she has been retaliated against for engaging in protected speech. Rather, the defendants have shown a likelihood that they will prevail on their argument that, not only was there no retaliation, but that the underlying speech to which plaintiff points is not even constitutionally protected.

### IV. Conclusion

Preliminary injunctions are "an extraordinary and drastic remedy which should not be routinely granted." Medical Soc'y. of the State of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977). An injunction should be issued "only where the intervention of a court of equity 'is essential in order to effectually protect . . . rights against injuries otherwise irremediable.'" Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). Particularly stringent requirements are applicable where preliminary injunctions are sought in government personnel cases. Sampson v. Murray, 415 U. S. 61, 90 (1974); Stewart v. U.S. Immigration and Naturalization Serv., 762 F.2, 193, 199 (2d Cir. 1985). The plaintiff has not sustained her burden of showing either irreparable harm or a likelihood of success on the merits of her claim. Therefore, plaintiff's motion for a preliminary injunction (Dkt. #45) should be **DENIED**. The parties may timely seek review of this

-21-

recommendation in accordance with Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules.  Fed. R. Civ. P. 72(b). Failure to do so may bar further review.  28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut, this 17th day of November, 2006.**

<u>**/s/ Thomas P. Smith**</u>
**Thomas P. Smith**
**United States Magistrate Judge**